726 A.2d 1021

BERKELEY TOWNSHIP ZONING BOARD OF ADJUSTMENT, PLAINTIFF, v. PURNELL M. ROWE, ROCCO DI PILLO, ROCCO MIRALDI AND THE TOWNSHIP OF BERKELEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Ocean County

Decided January 19, 1999.

*Howard Butensky*, for plaintiff (*Butensky & Pepe*).

*Carl W. Erler, III*, for defendants DiPillo and Miraldi (*Berry, Kagan, Sahradnik, Kotzas and Riordan*).

*Patrick J. Sheehan*, for defendant Township of Berkeley.

*James William Kennedy*, for defendant Rowe.

SERPENTELLI, A.J.S.C.

May a Board of Adjustment member withdraw a resignation from the Board before it is accepted by the appointing authority? That is the novel question presented by this case. It requires the court to determine the legislative intent underlying *N.J.S.A.* 40A:9–12.1(b), which has modified the common law principles regarding the resignation of appointed public officials.

Defendant Purnell M. Rowe (Rowe), a member of the Berkeley Township Zoning Board of Adjustment (Board), submitted a letter of resignation to the Board's Acting Chairman at the Board's meeting of May 13, 1998. Rowe left the meeting after the letter was read.

In addition to the Acting Chairman, the letter was addressed to the Township's Mayor, its Council members and the Board of Adjustment members. It is not clear whether copies were provided to all of the addressed individuals. However, by a memorandum dated May 14, 1998, the Board's secretary forwarded a copy of the Rowe letter to the Berkeley Township Mayor. She also copied the memorandum to the "Township Council" and the Chairman of the Board of Adjustment. The record does not establish whether the Council members or Board Chairman were provided with copies of Rowe's letter. Nonetheless, the memorandum stated that the letter of resignation was presented at the Board meeting held the previous evening and requested the preparation of a proclamation thanking Rowe for his twenty years of service.

The copy of the memorandum provided to the court reveals a stamp indicating that it was received by the Berkeley Township Municipal Clerk on May 18, 1998. There is also a stamp suggesting that it was routed by the Municipal Clerk's office to the Township Council and Township Administrator, among others. Again, it is not clear whether the letter of resignation was actually attached to the routed memorandum.

On June 3, 1998, Rowe sent a letter addressed to Mayor Bill Zimmermann, Jr. with a salutation of "Dear Mayor and Board Members". It advised that Rowe had decided to withdraw his resignation "effective immediately". That letter was stamped as received on June 3, 1998 but the recipient is not identified.

At the June 9, 1998 meeting of the Township Council, defendant Rocco DiPillo (DiPillo), an alternate member of the Board, was appointed to Rowe's position. Defendant Rocco Miraldi (Miraldi) was appointed to fill DiPillo's position as an alternate member. The following day, all three men attended a Board meeting and claimed to hold membership status. The complaint alleges that, in order to preserve the integrity of the Board's decisions, Rowe and Miraldi left the meeting with an understanding that the matter would be resolved at a future date. The Board brought this action

for that purpose and to protect its decisions from future challenges which might be based on an allegation that it was improperly constituted. The Board also sought instructions from the court as to which of the three persons should be seated on the Board. The Board became a neutral party once defendants Rowe, DiPillo and Miraldi joined issue regarding their status as Board members. The Township Council was joined as a party-defendant.

The resignation of appointed municipal officials is governed by *N.J.S.A.* 40A:9–12.1, which reads in part:

The office of any person appointed to a specified term, with or without compensation, by the governing body or chief executive of any local unit, including persons appointed to any board, committee, commission, authority or other agency of one or more local units, shall be deemed vacant:

    \*      \*      \*      \*      \*      \*      \*      \*

    b.  Upon the filing by such officer of his written resignation;

In order to answer the questions raised in this case, it is useful to juxtapose the statutory provisions regarding resignation from appointive offices with the provisions relating to vacancies in municipal governing bodies. The Municipal Vacancy Law, *N.J.S.A.* 40A:16–1 to –23 provides in pertinent part:

The office of a mayor or a member of the governing body of a municipality shall be deemed vacant:

    \*      \*      \*      \*      \*      \*      \*      \*

    f.  Upon the filing of a written resignation with the municipal clerk by the mayor or a member of the governing body,

[N.J.S.A. 40A:16–3.]

A comparison of the two statutes demonstrates they differ in one significant aspect. The Municipal Vacancy Law stipulates that a resignation takes effect when it is filed with the municipal clerk, thereby creating a vacancy immediately upon the ministerial act of receipt and eliminating any need for the exercise of discretion. While the legislation pertaining to appointed officials also only requires a "filing", it does not state with whom or where the filing must occur. This omission requires the court to make two determinations. First, where must the resignation of appointed

officials be filed? Second, does "filing" with the proper authority immediately create a vacancy or did the Legislature contemplate the performance of a subsequent action, such as acceptance?

An examination of the legislative history underlying the adoption of *N.J.S.A.* 40A:9–12.1 does assist in interpreting at least some of the legislative intent. Assembly Bill No. 1410, which ultimately became *N.J.S.A.* 40A:9–12.1 in an amended form, provided that the office of an appointed person was to become vacant upon the officer's written resignation *filed with and accepted by the appointing authority.* The Statement of the Senate County and Municipal Government Committee dated February 13, 1979, makes reference to the Municipal Vacancy Law and contains the following language:

> The circumstances under which a vacancy occurs under this bill parallel those under which a vacancy occurs under Senate Bill No. 1217 [the Municipal Vacancy Law], as modified to reflect the fact that this bill applies to appointive, rather than to elective offices.

On November 19, 1979 Governor Byrne issued a statement concerning Assembly Bill No. 1410. It said, in part:

> On April 26, 1979 I enacted S–1217, the Municipal Vacancy Law (P .L.1979, c. 83), which concerns vacancies in the office of mayor and in the membership of the governing body of municipalities. This bill would establish similar requirements as those set forth in S–1217 for determining when and under what circumstances a vacancy exists in appointive local offices as modified to reflect the fact that the bill would apply to appointive, rather than to elective offices. However, there is one requirement which differs between these bills which should be made more consistent.
>
> Under the Municipal Vacancy Law the office of mayor or a member of the municipal governing body is deemed vacant upon the filing of a written resignation by the office holder with the municipal clerk. This bill would establish that an appointive office for a specified term is deemed vacant upon the acceptance by the appointing authority of the appointed officer's duly filed written resignation. One purpose of this legislation is to clearly and specifically indicate under what circumstances an appointive office would be deemed vacant. In my judgment, this purpose would be better served by establishing that a vacancy in an appointive office would occur *upon the filing of a written resignation rather than upon acceptance of a resignation by the appointing authority.*
>
> [Emphasis added].

The Governor recommended the deletion of all language relating to the acceptance of resignations. The Legislature concurred

and the statute was passed in the form cited earlier in this opinion. Thus, from the chronology of events, it is evident that the Legislature intended to eliminate any requirement of acceptance by the appointing authority.[1]

Although the Governor was clearly aware that the Municipal Vacancy Law requires resignations to be filed with a municipal clerk, his suggested changes to the Assembly Bill eliminated all references to where or with whom the resignations of appointed officials must be filed. Therefore, those questions were not disposed of by the enactment of *N.J.S.A.* 40A:9–12.1 and, to that extent, the statute no longer parallels the Municipal Vacancy Law.

If the distinction was not purposeful, filing with the municipal clerk might be inferred as the appropriate procedure by virtue of the kinship between *N.J.S.A.* 40A:9–12.1 and the Municipal Vacancy Law, as well as the expressed legislative intent that the two enactments parallel each other. Under those circumstances, Rowe's claim for reinstatement would fail if, as the record suggests, his letter was received by the Township Clerk.[2]

However, Rowe argues the Legislature consciously omitted the municipal clerk requirement from *N.J.S.A.* 40A:9–12.1. He reasons that the Legislature is presumed to be thoroughly conversant with its own legislation when it enacts a statute. That is particularly true, he asserts, when both statutes were enacted in the same session of the Legislature in 1979. Rowe concludes that if the

---

[1] It is interesting to note that in *Apgar v. Smith*, 169 *N.J.Super.* 221, 404 *A.2d* 659 (Law Div.1979), the court held that the Municipal Vacancy Law did not require acceptance of a council member's resignation but then said: "Contrast *N.J.S.A.* 40A:9–11, in which the Legislature has required resignations to be accepted when the official involved is not a member of a governing body." *Id.* at 226, 404 *A.2d* 659. *Apgar* was decided on June 12, 1979, approximately seven months before the Legislature eliminated the requirement of acceptance by virtue of the adoption of *N.J.S.A.* 40A:9–12.1, on January 17, 1980.

[2] Rowe has made no effort throughout this litigation to demonstrate that the Township Clerk did not receive his letter or that the Township Council was not well aware of his resignation long before he sought to withdraw it.

Legislature had sought to make a resignation of an appointed official effective merely by filing with the municipal clerk, it could have easily inserted the words "with the municipal clerk" after the words "written resignation" in *N.J.S.A.* 40A:9–12.1(b). Rowe also contends his resignation letter was neither addressed to nor forwarded by him to the Township Clerk. Therefore, filing with the Clerk could not have occurred until *after* the matter was presented to the Township Council and acted upon by it at the June 9, 1998, meeting. As noted, before the meeting took place, Rowe had rescinded his resignation.

The difficulty with Rowe's argument is that the history of the statute demonstrates the Legislature intended to adopt the Governor's recommendation that the acceptance requirement be eliminated. Thus, if the Township Council's acceptance was not required, the only question unanswered by the statute is where the resignation should have been filed.

Here, some rather ancient but sensible common law principles still prevail. In *Fryer v. Norton*, 67 *N.J.L.* 537, 538–39, 52 *A.* 476 (E & A 1902), the Court said:

> [I]n the absence of any special rule prescribing to what authority a resignation should be presented, the proper authority to accept the resignation is that which has the power to fill the vacancy. In this exposition of law we entirely concur, and deem it to be founded on reason and supported by the better authority. [Citing authority].[3]

While Rowe may argue that the Legislature should have made the statute completely parallel, the Township Council provides a justification for the omission of a requirement of filing with the municipal clerk. The Council suggests that in all instances in which a resignation is tendered under the Municipal Vacancy Law, the filing must be with the municipal clerk because those involved in filling the vacancy would be the mayor and the governing body.

---

[3] See also *Kuberski v. Haussermann*, 113 *N.J.L.* 162, 172 *A.* 738 (Sup.Ct.1934); *Cf., Andrews v. Lamb*, 136 *N.J.L.* 548, 57 *A.*2d 365 (Sup.Ct.1948) (holding that acceptance of a resignation by the body authorized to do so precludes withdrawal of the resignation).

However, this is not the case in all instances in which a resignation is tendered under *N.J.S.A.* 40A:9–12.1. Since the statute relates to any person appointed by the governing body or chief executive to any board, committee, commission, authority or other agency, the appointing authority could be either the governing body or chief executive and, therefore, the person authorized to receive the resignation might be different as well. Of course, the Legislature could have easily designated the place of filing based on whether the person was appointed by the governing body or the chief executive, but it did not do so.[4]

Another argument, not raised by the Township Council or the two new appointees, can be based on the Governor's statement of recommended changes to Assembly Bill No. 1410. It could be hypothesized that when the Governor said that the purpose of the legislation would be better served by establishing "a vacancy in an appointive office would occur upon the filing of a written resignation rather than upon acceptance of a resignation by the appointing authority", he intended to eliminate the acceptance requirement but not to eliminate the requirement of filing with the appointing authority. Unfortunately, the statute subsequently enacted does not have that clarity. As noted, the revised legislation removed all references to where or with whom the filing should take place.

Moreover, there is no need to speculate about what either the Governor or the Legislature intended. The common law principles described above fill in the gap. Furthermore, the common law rule coincides with the Municipal Vacancy Law, since both call for filing of the resignation with the appointing authority, whomever that may be. Thus, the two statutes become more parallel by this interpretation—a condition which the Legislature stated it

---

[4] While not necessary to the resolution of the case before the court, it should be noted *N.J.S.A.* 40A:9–12.1 does not define the term "chief executive". Thus, it is not clear whether the Legislature intended to refer to a mayor or other elected head of the governing body or whether the term refers to a position such as an administrator or manager.

was seeking to achieve in the adoption of the appointed officer vacancy statute.

Additionally, the result reached here is consistent with the shift in philosophy which has occurred over the years concerning the treatment of resignations from public bodies. In early common law, resignations were discouraged and generally seen as contrary to the public welfare. Thus, in *Fryer v. Norton, supra,* the Court upheld the Borough Council's refusal to accept the resignation of one of its members, notwithstanding the Mayor's acceptance of the resignation. *Id.* at 541–42, 52 *A.* 476.

The rationale behind such decisions was best expressed in *Kuberski v. Haussermann,* 113 *N.J.L.* 162, 167, 172 *A.* 738 (Sup. Ct.1934) where the Court said:

> The underlying considerations for this rule are that civil officers are appointed for the purpose of exercising the functions and carrying on the operations of government, and maintaining public order, and they cannot throw off their responsibilities at their own pleasure. To refuse an office in a public corporation connected with local jurisdiction was a common law offense, and punishable by indictment. An office was regarded as a burden which the appointee was bound, in the common interest, to bear. It is a corollary of this that an office conferred and assumed cannot be resigned without the consent of the proper authority, signified by the acceptance of the resignation. This doctrine is deeply rooted in public policy. It is one calculated to avoid the inconvenience and embarrassment consequent upon the want of public servants to execute the laws, and it thus safeguards the public interest.

Our modern legislation bespeaks a wholly different approach to the treatment of resignations. The Senate County and Municipal Government Committee Statement of December 4, 1978, accompanying the proposed Municipal Vacancy Law, says that one of the guiding principles of the bill was to see that vacancies are filled as quickly as possible. The same Committee's statement regarding Assembly Bill No. 1410 (appointed officials) emphasizes the desire to eliminate the vagaries of the existing law, thereby avoiding the need for judicial determinations. The decision to make resignations effective on filing and to eliminate acceptance as a requirement also suggests a recognition that it may be adverse to the public good to require someone to serve involuntarily. To the contrary, the orderly and efficient operation of government may

be best served by a process which expedites the filling of the vacancy created by the resignation.

Rowe filed his resignation on May 13, 1998, by a letter addressed to the Mayor, Township Council members and Board members. The memorandum attaching Rowe's resignation was received by the Municipal Clerk on May 18, 1998. Since the Township Council is the proper appointing authority for Board of Adjustment members pursuant to *N.J.S.A.* 40:55D–69, the resignation was filed with its appropriate agent and took effect upon filing. Thus, Rowe's subsequent effort to withdraw his resignation was nugatory and the resolution adopted by the Township Council on June 9, 1998, appointing DiPillo and Miraldi as a member and alternate member of the Board was validly adopted.