966 A.2d 1008

CZAR, INC., A NEW JERSEY CORPORATION, PLAINTIFF–
APPELLANT, v. JO ANNE HEATH AND THOMAS J.
HEATH, SR., DEFENDANTS–RESPONDENTS.

Argued October 20, 2008—Decided March 18, 2009.

196

*Matthew T. Priore* argued the cause for appellant, (*Mr. Priore,* attorney; *Mr. Priore* and *Robert A. Vort,* on the briefs).

*James C. DeZao, III,* argued the cause for respondents.

Justice HOENS delivered the opinion of the Court.

This appeal presents us with a novel question about the scope and application of the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20. In short, we are required to decide whether a contractor hired by a homeowner to design and install a kitchen and to perform certain other interior work in a new home then being built for the homeowner by a different contractor, was engaged in new home construction or was instead performing home improvements. The homeowners argue that the kitchen and interior work constituted home improvements, thus subjecting the contractor to suit pursuant to the CFA because of the 2004 amendments to that statute, *see N.J.S.A.* 56:8–136 to –152, regulating the work of home improvement contractors. The contractor contends that any work performed as part of building a new home is excluded from the definition of home improvements that is utilized by the CFA and that the homeowners' claim is governed instead by the New Home Warranty and Builders' Registration Act, *N.J.S.A.* 46:3B–1 to –20.

Because the several statutes relied upon by the parties, and the regulations promulgated pursuant to each of them, were designed to be understood and applied as an integrated scheme of protections for homeowners, and because adopting plaintiff's analytical approach might leave these homeowners without the remedy that the Legislature intended be available to them, we conclude that plaintiff, which neither acted as the general contractor nor qualified as a builder of new homes, was engaged in the business of home improvements and subject to the remedies of the CFA.

## I.

The facts that are germane to our analysis of this issue are relatively few. Defendants JoAnne and Thomas Heath, Sr., contracted with a general contractor to build a new home for them in Florham Park. After much of the home had been completed, they hired plaintiff Czar, Inc., to design the kitchen, which included relocating the plumbing and electrical fixtures, to build and install custom kitchen cabinets, and to perform other interior work, consisting of the installation of interior doors, a front door, window casings, and decorative moldings throughout the house.

Before plaintiff completed the work, a dispute arose and defendants refused to pay plaintiff the full contract price for services and work that plaintiff had performed. Plaintiff's complaint, filed in Essex County, demanded that defendants pay $80,296.96, representing the balance of the original contract price of $153,296.96, together with interest and costs. Plaintiff's complaint alleged that it had performed by building the custom kitchen cabinets and that defendants breached the contract by preventing plaintiff from delivering and installing the cabinets, and thus completing its work.

At approximately the same time, the Heaths filed their complaint in Morris County, claiming that Czar, Inc. had failed to perform its work according to the terms of the contract, that the work that it had performed was neither workmanlike nor completed on time, and that the kitchen cabinets in particular were not what had been promised. In their complaint, the Heaths asserted that they were entitled to relief based upon nine separate causes of action, including breach of contract, negligence, fraud, consumer fraud, negligent infliction of emotional distress, conversion, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and unlawful possession of goods for which the Heaths had already paid.

The parties consented to having the complaint filed by the Heaths transferred to Essex County and consolidated with the complaint that Czar, Inc. had previously filed, after which it

proceeded as a counterclaim. When the parties appeared for trial, plaintiff moved in limine to dismiss defendants' CFA count. Central to the arguments between the parties was their dispute about the true nature of plaintiff's work. Defendants asserted that the work was properly categorized as home improvements, and thus governed directly by the CFA, while plaintiff argued that its work was simply part of the construction of a new home, and therefore specifically excluded from the CFA.

The trial court, after hearing testimony from witnesses that it deemed necessary to its decision on the motion, dismissed the CFA claim. In support of its order, the court found that the work to be performed by plaintiff under the contract was "essential to the construction of a new residence." As a result, the court concluded that plaintiff's services were properly classified as the "construction of a new residence" rather than the performance of home improvements. Relying on language in the home improvement regulations promulgated pursuant to the CFA that excluded new residential construction, *see N.J.A.C.* 13:45A–16.1A, the court concluded that defendants could not seek CFA remedies against plaintiff.

The Appellate Division, in a published opinion, reversed. *Czar, Inc. v. Heath*, 398 *N.J.Super.* 133, 939 *A.*2d 837 (App.Div.2008). In its view, the exemption for construction of a new residence found in the home improvement regulations, *see N.J.A.C.* 13:45A–16.1A, did not apply to the work performed by plaintiff. *Czar, Inc., supra,* 398 *N.J.Super.* at 135, 939 *A.*2d 837. In part, the panel relied on the undisputed facts that "plaintiff was not the general contractor hired to construct a new residence, did not install or build any structural improvements in the home, but rather contracted directly with defendants for the installation of custom kitchen cabinets, a front door, interior doors, and certain moldings." *Id.* at 138, 939 *A.*2d 837.

In addition, the panel based its decision on its analysis of the applicable statutes and regulations, concluding that they could only be understood if all of them were read "*in pari materia* [, an

analysis that] results in a harmonious and effective remedy for homeowners." *Id.* at 139, 939 *A.*2d 837. The panel reasoned that because the statutory remedies applicable to new home builders would not be available to correct work done by a separately-retained contractor who merely performs his work in a new home, plaintiff's theory would deprive defendants of protections to which they were entitled. *Id.* at 138–39, 939 *A.*2d 837.

As a part of its consideration of the issues, the court distinguished two earlier Appellate Division decisions, *see Messeka Sheet Metal Co. v. Hodder*, 368 *N.J.Super.* 116, 124–25, 845 *A.*2d 646 (App.Div.2004) (concluding that subcontractor could not be subject to homeowner's claim pursuant to home improvement regulations); *Splash of Tile, Inc. v. Moss*, 357 *N.J.Super.* 143, 154, 814 *A.*2d 648 (App.Div.) (suggesting broad interpretation of new home construction exclusion), *certif. denied*, 176 *N.J.* 430, 824 *A.*2d 159 (2003), concluding that neither directly addressed the essential questions presented in this dispute. *Czar, Inc., supra*, 398 *N.J.Super.* at 140–41, 939 *A.*2d 837.

Finally, and in the alternative, the Appellate Division concluded that even if plaintiff were considered to be engaged in new home construction, that separate statutory scheme included a reservation of, and an election of, remedies, *see N.J.S.A.* 46:3B–9, which, in its view, would preserve a CFA cause of action as an alternative form of relief. *Czar, Inc., supra*, 398 *N.J.Super.* at 140, 939 *A.*2d 837.

We granted plaintiff's motion for leave to appeal, 195 *N.J.* 414, 949 *A.*2d 845 (2008).

## II.

The issue raised in this appeal relates only to defendants' CFA claim and turns on only a single point of contention between the parties. Simply put, plaintiff, the contractor, argues that the CFA and the regulations on which defendants rely do not afford defendants a remedy because plaintiff's work was part of the building of defendants' new home. Defendants contend that the CFA pro-

vides them with a cause of action because plaintiff was not the builder of a new home, but was instead performing work that constituted a home improvement, albeit in connection with the construction of a new residence.

Answering the deceptively simple question raised, that is, whether plaintiff was engaged in new home construction or was performing home improvements, requires that we analyze the interplay between the CFA, *N.J.S.A.* 56:8–1 to –20, the Contractor's Registration Act, *N.J.S.A.* 56:8–136 to –152, the regulations adopted pursuant to the Contractor's Registration Act, *N.J.A.C.* 13:45A–16.1 to –17.14, the New Home Warranty and Builders' Registration Act, *N.J.S.A.* 46:3B–1 to –20, and the regulations promulgated to implement that statute, *N.J.A.C.* 5:25–1.1 to –5.5.

▆ We need say little about the CFA, its history or its scope because, as it relates to the issue before us, we have sufficiently explained the statute and its essential purposes in our many earlier decisions. *See, e.g., Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 11, 860 *A.2d* 435 (2004); *Cox v. Sears Roebuck & Co.,* 138 *N.J.* 2, 21, 647 *A.2d* 454 (1994). Indeed, we need only reiterate that it is broad remedial legislation enacted for the protection of consumers of a variety of goods and services, *see Thiedemann v. Mercedes–Benz USA, L.L.C.,* 183 *N.J.* 234, 245, 872 *A.2d* 783 (2005), and that its history has been marked by the "constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 604, 691 *A.2d* 350 (1997). Of particular significance to this matter, we note that over the years following the initial adoption of the CFA, the Legislature has repeatedly amended and expanded the reach of its provisions, often by adding sections to address particular areas of concern and to include them specifically within its protective sweep. *See, e.g., N.J.S.A.* 56:8–26 to –38 (regulating resale of tickets to "places of entertainment"); *N.J.S.A.* 56:8–39 to –48 (regulating health club contracts); *N.J.S.A.* 56:8–61 to –66 ("preventing consumer fraud in the preparation, distribution and sale of food as kosher").

One example of this expansion of the application of the CFA can be seen in the Legislature's 2004 enactment of the Contractor's Registration Act, *L.* 2004, *c.* 16 (codified at *N.J.S.A.* 56:8–136 to –152). That statute, and the implementing regulations promulgated thereafter, *see N.J.A.C.* 13:45A–16.1 to –17.14, created a framework within the CFA that regulates contractors who are engaged in the business of making or selling home improvements. Although the legislative history surrounding the statute is sparse, there can be no doubt about the fact that the Legislature regarded the home improvement industry as being greatly in need of regulation. Indeed, the seriousness with which the Legislature approached the perceived problems in that industry is reflected both in the expansive language of the statute's definitional reach and in the remedies that the statute authorizes.

In particular, the Legislature made the statute applicable broadly, by defining those in the home improvement industry that would fall within its terms without regard to the type of business entity through which they operated. *See N.J.S.A.* 56:8–137 (defining contractors to include persons operating through "corporation, partnership, association and any other form of business organization or entity" together with their "officers, representatives, agents and employees"). Similarly, the statute used sweeping language in its definition of "home improvements" so that the requirements of the Act would reach an extensive variety of persons and entities involved in the home improvement business. *See ibid.* (defining home improvement). As a result, the statute applies to individuals and entities engaged in "remodeling, altering, renovating, repairing, restoring, modernizing, moving, demolishing, or otherwise improving or modifying of the whole or any part of any residential or non-commercial property . . . [and] shall also include insulation installation, and the conversion of existing commercial structures into residential or non-commercial property." *Ibid.*

Apart from those expansive definitions both as to the persons or entities that are engaged in the business and as to the nature of

the business of home improvements, the statutory enforcement mechanisms chosen by the Legislature independently suggest an intention to provide strong protections to consumers. Some are regulatory in nature, for example, requiring any person or entity that falls within the definition of a home improvement contractor, *see N.J.S.A.* 56:8–137, to register with the Division of Consumer Affairs, *N.J.S.A.* 56:8–138, and to make detailed annual disclosures that might subject it to suspension or revocation of its registration, *N.J.S.A.* 56:8–141; *see N.J.A.C.* 13:45A–17.3 (imposing detailed registration requirements).

Other provisions, however, relate either directly or indirectly to the remedies that the Legislature intended the statute to make available to the consumer. As an example, persons or entities involved in the home improvement industry are obligated to "secure [and] maintain ... commercial general liability insurance" in the required amount, *N.J.S.A.* 56:8–142. In practice, the requirement that the contractors carry insurance does not protect consumers [1] directly; instead the statute provides two other, powerful means of enforcement. The Act specifically makes any violation of its provisions "an unlawful practice" subject to the remedies available under the CFA, *N.J.S.A.* 56:8–146(a), as well as a fourth degree criminal offense, *N.J.S.A.* 56:8–146(b). The statute's identification of the CFA as its principal civil enforcement

---

[1] There is some contemporaneous evidence that the Legislature originally expected that the bill's requirement that contractors carry insurance would be available to make adversely affected homeowners whole. *See* Kevin G. DeMarrais, *Under Construction: Insurance, Registration Rules for Contractors*, The Record (Bergen County), Aug. 4, 2004, L12 ("Contractors also will be required to carry ... insurance, which would help provide restitution to consumers who are defrauded or don't have jobs completed."). Newspaper accounts reporting on the Legislature's almost immediate amendment of the statute to change the originally-included effective date of November 9, 2004, *see L.* 2004, *c.* 16, § 18, so as to delay implementation for a year, *see L.* 2004, *c.* 155, § 5 (amending statute to impose effective date of December 31, 2005), pointed to the discovery "that general liability insurance would not provide restitution, as intended," as the principal reason for that delay. Kevin G. DeMarrais, *McGreevey Approves Delay on Contractor Law*, The Record (Bergen County), Nov. 9, 2004, L11.

mechanism, particularly in light of the adoption of implementing regulations that identify numerous prohibited practices, *see* *N.J.A.C.* 13:45A–16.2, strongly suggests that the Legislature intended to broadly empower consumers of these services to seek relief for violations and to be made whole.

In spite of its breadth, however, the statute requiring registration of home improvement contractors specifically exempts certain persons and entities from its provisions entirely. *See N.J.S.A.* 56:8–140. In relevant part, the Legislature excluded from this statute "any person required to register pursuant to 'The New Home Warranty and Builders' Registration Act,' *P.L.* 1977[, *c.*] 467 ( [*N.J.S.A.*] 46:3B–1 [to –20] )." *N.J.S.A.* 56:8–140(a). Although the available legislative history does not illuminate the reasons for that exemption, it is apparent that the Legislature recognized that individuals and entities that were then governed by the New Home Warranty Act were already subject to a registration requirement and a regulatory mechanism that provided recourse to the homeowners who dealt with them through that statute's separately-mandated remedies.

Indeed, it is plain that the Legislature intended to create complementary protections for people who were, on the one hand, either building or buying new homes or, on the other hand, using the services of persons or entities who were engaged in making home improvements. We reach this conclusion because the New Home Warranty Act, which had been in existence for nearly three decades, made specific remedies available to new home buyers, a part of which included a registration requirement for new home builders through which their participation in those remedial programs would be assured. *See N.J.S.A.* 46:3B–5. The key to our understanding about how the Legislature intended these statutes to be construed in a complementary fashion lies in the identity of the entities to which each applies and the differences in the remedies that each affords.

Unlike the expansive language used in the statutory scheme that regulates home improvement contractors, the New Home

Warranty Act defines "builder" simply in terms of entities "engaged in the construction of new homes." *N.J.S.A.* 46:3B–2(f); *see N.J.A.C.* 5:25–1.3 (defining "new home builder" as one "engaged in the construction of new homes"). Plaintiff asserts that we should give a broad reading to that definition, with the effect that anyone "engaged in the construction of new homes" would be expanded to mean anyone "participating in" or "playing a role in" the construction of a new home or anyone "working on the premises" of a new home under construction. *See, e.g., Messeka Sheet Metal, supra,* 368 *N.J.Super.* at 124–25, 845 *A.*2d 646 (considering, but not deciding, whether supplier, who contracted with general contractor engaged in new home construction, was exempt from home improvement regulations); *Splash of Tile, supra,* 357 *N.J.Super.* at 154, 814 *A.*2d 648 (commenting in dicta that all construction within new home would fall outside home improvement regulations). A further analysis of the statute itself, however, yields no support for that interpretation.

Although, like the statute and regulations governing home improvement contractors, the New Home Warranty Act includes a registration requirement, *N.J.S.A.* 46:3B–5 ("No builder shall engage in the business of constructing new homes unless he is registered with the [Department of Community Affairs]."); *N.J.A.C.* 5:25–2.1(a) (requiring those "engage[d] in the business of constructing new homes" to register), its principally-available remedy is embodied in its warranty program. *See N.J.S.A.* 46:3B–3. New home builders must either participate in that program and make the new home warranty available to home buyers, *ibid.,* or must qualify for the alternate new home warranty security program, *N.J.S.A.* 46:3B–8, and make that relief available to new home buyers. *N.J.S.A.* 46:3B–5. In either event, the statute provides that a new home buyer can elect to access the warranty which, by and large, is focused on major systems or structural defects that might be found in a new home. *N.J.S.A.* 46:3B–3(b).

We have recognized that the New Home Warranty Act "standardizes the responsibilities of new-home builders" and, in part,

that its warranty program "protect[s] homeowners by providing a source of payment to correct deficiencies caused by culpable builders." *Marchak v. Claridge Commons, Inc.*, 134 *N.J.* 275, 279, 633 *A.*2d 531 (1993). At the same time, we have concluded that the warranty program does not necessarily replace traditionally available remedies, and that even though arbitration is a central feature of the warranty program, "[t]he owner's right to sue ... remains intact." *Id.* at 280, 633 *A.*2d 531. In spite of that, the warranty program is the statute's essential method for protecting new home buyers and our Appellate Division has recognized that its scope can extend to matters not otherwise included within that remedy. *See Konieczny v. Micciche*, 305 *N.J.Super.* 375, 380, 702 *A.*2d 831 (App.Div.1997) (concluding that homeowner accepting warranty remedy extending to contractual obligation normally outside warranty protection is foreclosed from litigating that claim).

■ Although resort to the warranty is not an exclusive avenue for relief[2] under the New Home Warranty Act, the statute provides that the homeowner's decision to avail himself or herself of that avenue for relief is an affirmative election of remedies. *N.J.S.A.* 46:3B–9. As a result, reliance on the warranty will also preclude suit based on a defect within the scope of the warranty that the homeowner knew or should have known about. *See Konieczny, supra*, 305 *N.J.Super.* at 380, 702 *A.*2d 831. Even though the Legislature provided new home buyers with the ability to select either the warranty or traditional remedies, the New

---

[2] The Appellate Division expressed an alternate ground on which it would have decided the matter in defendants' favor. It suggested that the New Home Warranty Act's statutory reservation of non-warranty remedies could be read to afford defendants a CFA remedy even if plaintiff's work qualified as the building of a new home. *See Czar, Inc., supra*, 398 *N.J.Super.* at 140, 939 *A.*2d 837. Whether that language in the New Home Warranty Act, which is not itself codified as an amendment to the CFA, should be interpreted as an expression of the Legislature's intent to authorize a CFA remedy, as opposed to a common law fraud remedy, is a question that, in light of our analysis, we neither consider nor endorse.

Home Warranty Act, by making the provision of a warranty its central focus, necessarily limits the meaning of the definition of contractors to whom the statute can apply.

By comparing these two statutes, the way in which they create a harmonious protective scheme is apparent. Each of the statutes imposes a registration requirement upon a defined group of contractors. The earlier enacted of the two, applicable to new homes, created a warranty program, coupled with a dispute resolution mechanism and a home buyer's right to elect remedies. It required the new home contractor or builder to include warranty information in the registration as a means for the Department of Community Affairs to ensure compliance and, by extension, to make the warranty an effective remedy, and included monetary penalties to ensure that new home builders would register as required. *N.J.S.A.* 46:3B–12.

The more recently enacted statute governing home improvement contractors, *N.J.S.A.* 56:8–136 to –152, which was codified as an amendment to the CFA, similarly includes a registration provision, *see N.J.S.A.* 56:8–138. In place of the warranty protections required of new home builders, however, this statute protects homeowners by requiring insurance, disclosures, and, through the implementing regulations, by specifying numerous practices that are defined to be unlawful, all specifically deemed to fall within the CFA and, therefore, made subject to its enforcement mechanisms and remedies. *See N.J.S.A.* 56:8–146.

Reading the two statutes together, we see the Legislature's plan to create a seamless web of protections for the homeowner. It is plain that the Legislature, by excluding contractors already subject to the New Home Warranty Act from the newer enactment, both relieved them from the additional registration requirement and, by extension, permitted them to make available and, to great extent, rely on the remedies available through that statute, including its warranty program. There is, however, no basis on which to conclude that the Legislature intended that its exemption from registration for contractors

covered by the New Home Warranty Act would create a broad exemption from the requirements it was imposing on home improvement contractors in its CFA amendments.

## III.

■ Viewed in light of the sequence in which these two statutes were enacted, and utilizing a comparison between the different approaches and remedies employed by the Legislature in each of them, the fallacy of plaintiff's position is apparent.

Plaintiff essentially argues that it cannot be liable to defendants under the CFA because it was involved in the building of a new home and therefore exempt because of the exclusion for new home builders set forth in the statute relating to home improvements that is codified within the CFA, *see N.J.S.A.* 56:8–140(a), and its implementing regulations, *see N.J.A.C.* 13:45A–16.1A; *N.J.A.C.* 13:45A–17.2; *N.J.A.C.* 13:45A–17.4(a)(1). Critical to plaintiff's assertion is its argument that the definitions found in the New Home Warranty Act, *see N.J.S.A.* 46:3B–2(d); *N.J.S.A.* 46:3B–2(f), and particularly in that statute's implementing regulations, *see N.J.A.C.* 5:25–1.3, are worded so as to apply broadly and generally to any business involved in new home construction. At the same time, however, plaintiff does not suggest that it registered as a new home builder pursuant to the New Home Warranty Act, or that it made available to defendants the warranty that is so central to that statute's protections. Instead, plaintiff simply would have us read the definition of new home builders found in the New Home Warranty Act and couple it with an expansive understanding of the statutory provision that excludes new home builders from the statute governing home improvement contractors, without regard to the obvious reason why the Legislature would have found it appropriate to relieve new home builders of the obligation to comply with the regulatory scheme created to regulate home improvers that it chose to include within the CFA.

We see in the position expressed by plaintiff the kind of "crabbed" approach to the CFA that the Appellate Division has

criticized, *New Mea Constr. Corp. v. Harper*, 203 *N.J.Super.* 486, 502, 497 *A.*2d 534 (App.Div.1985), and we have likewise eschewed in favor of a faithful adherence to the CFA's broad remedial purposes, *see, e.g., Thiedemann, supra,* 183 *N.J.* at 245, 872 *A.*2d 783; *Gennari, supra,* 148 *N.J.* at 604, 691 *A.*2d 350; *Cox, supra,* 138 *N.J.* at 21, 647 *A.*2d 454. In essence, plaintiff would have us conclude that it was both exempt from the remedies available to consumers under the home improvement statute and regulations and yet not obligated to provide the warranty remedy that the New Home Warranty Act requires. This analytical construct, however, would require us to read the two statutes in a manner that would leave some contractors, like plaintiff, subject to neither statute.

We decline to read the statutes as plaintiff suggests because it would provide less, rather than more, protection for the homeowner. In light of the expansive approach taken in the realm of homeowners' protections, there is no basis on which to conclude that the Legislature intended that a contractor engaged by a homeowner could escape registration and participation in the warranty program applicable to new home builders and also avoid registration and compliance with the applicable remedies available under the statute and regulations that govern home improvement contractors. However sparse the evidence of the Legislature's intent when it exempted new home builders from having to comply with the statute requiring home improvement contractors to register, it is abundantly clear that the Legislature did not choose to diminish means of oversight over contractors working on homes nor to decrease the remedies available to consumers who dealt with them.

These two statutes represent a carefully created series of obligations imposed on contractors, each providing the homeowner with certain protections. There is no place in them for a contractor to use the one with which it did not comply as a sword against the homeowner whose rights the Legislature intended to protect. That defendants hired plaintiff to build the kitchen and make

other changes to the home not yet completed is of no moment. Instead, we look beyond the description and location of the work to be performed, and focus on whether the entity hired to perform it would have been required to, or could have adhered to, the New Home Warranty Act registration and warranty program. As plaintiff simply did not, we think it plain that its argument that it was engaged in the construction of a new home fails.

### IV.

The judgment of the Appellate Division is affirmed as modified.

Justice RIVERA–SOTO, dissenting.

In order to shoehorn construction work on a new home that had not been completed, permitted, or even ever occupied into the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20, the majority concludes that "plaintiff, which neither acted as the general contractor nor qualified as a builder of new homes, was engaged in the business of home improvements and subject to the remedies of the CFA." *Ante* at 197, 966 *A.*2d at 1009. According to the majority, the CFA and the New Home Warranty and Builders' Registration Act (the New Homeowners Warranty or HOW Act), *N.J.S.A.* 46:3B–1 to –20, are "designed to be understood and applied as an integrated scheme of protections for homeowners[.]" *Ibid.* Because it concludes that failing to apply either statute in this setting "might leave these homeowners without the remedy that the Legislature intended be available to them[,]" *ibid.,* the majority then holds that a contractor who performs work in a new, unfinished, and unoccupied residence that lacks a certificate of occupancy is somehow engaged in home improvements falling under the purview of the CFA.

That analysis is faulty. Simply because the Legislature sought to cure one set of ills under the CFA and yet another set of ills under the HOW Act does not somehow mean that *all* claims involving the construction of a new home must fall under one statutory scheme or the other. In its analysis, the majority

ignores our common law, which is designed to fill the gaps that may exist between the coverage of dissimilar statutes. *See, e.g., Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.*, 195 *N.J.* 457, 460, 950 *A.*2d 868 (2008) ("Assuming, without deciding, that our common law may admit of a cause of action for prima facie tort, it is solely a gap-filler."); *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 179 *N.J.* 87, 97, 843 *A.*2d 1094 (2004) (explaining that, because general comprehensive liability policies of insurance "do not provide guidance on how to apportion liability for long-tail injury, common law must fill the gaps" (citing Rebecca M. Bratspies, *Splitting the Baby: Apportioning Environmental Liability Among Triggered Insurance Policies*, 1999 *B.Y.U. L.Rev.* 1215, 1218)); *Negron v. Llarena*, 156 *N.J.* 296, 315, 716 *A.*2d 1158 (1998) (Handler, J., concurring) (" 'When recognized, this common law right to recover for wrongful death has been utilized to fill in unintended gaps in present statutes or to allow ameliorating common law principles to apply.' ") (quoting *Restatement (Second) of Torts* § 925 cmt. k (1979) (editing marks omitted)); *LePore v. National Tool & Mfg. Co.*, 115 *N.J.* 226, 227, 557 *A.*2d 1371 (1989) (noting that "[o]ur recognition of a common-law cause of action for covered employees merely closes a narrow gap between the protection granted by the statute and our earlier decision in *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 417 *A.*2d 505 (1980), which dealt with at-will employees"); *Berkeley Twp. Zoning Bd. of Adjustment v. Rowe*, 320 *N.J.Super.* 164, 171, 726 *A.*2d 1021 (Law Div.1999) (explaining, in land use context, that "[t]he common law principles described above fill in the gap"); *cf. State v. Tate*, 102 *N.J.* 64, 73, 505 *A.*2d 941 (1986) (explaining that, when considering a comprehensive statutory scheme, "[t]his Court's common-law gap-filling authority with regard to the criminal law should be exercised only when there is in fact a gap to be filled. There is none.").

In so doing, the majority also ignores that which even the homeowners in this case readily acknowledge: there is no gap to be filled here, as the homeowners still retain their already pled claims for breach of contract, negligence, fraud, negligent infliction

of emotional distress, conversion, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and unlawful possession of goods. Success on any one of these claims will provide the homeowners complete relief, although admittedly not the windfall of the additional penalties of treble damages and attorneys' fees recoverable under the CFA. *N.J.S.A.* 56:8–19.

The vice evident in the majority's conclusions arises from its reasoning. In order to reach the result it seeks, the majority must torture both the facts and the law to conclude that the work done by this contractor—who was contracted directly by the owner to perform the installation of custom kitchen cabinets, interior doors, a front door, and certain moldings in a brand-new, never-occupied, never-completed, and never-permitted home— somehow consists of a "home improvement" subject to the CFA's reach. It does so even though the regulatory definition of a "home improvement" specifically provides that it *"does not include the construction of a new residence* [,]*" N.J.A.C.* 13:45A–16.1A (emphasis supplied), and despite the fact that such interpretation flies in the face of a clear statutory injunction:

> *In the construction of the laws and statutes of this state,* both civil and criminal, *words and phrases shall* be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, *be given their generally accepted meaning, according to the approved usage of the language.*
>
> [*N.J.S.A.* 1:1–1 (emphasis supplied).]

This Court consistently has hewed to that legislative mandate. *See Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 964 *A.*2d 741 (2009) (citing statute); *Livsey v. Mercury Ins. Group*, 197 *N.J.* 522, 964 *A.*2d 312 (2009) (same); *In re Liquidation of Integrity Ins. Co.*, 193 *N.J.* 86, 94, 935 *A.*2d 1184 (2007) (same); *Soto v. Scaringelli*, 189 *N.J.* 558, 570–71, 917 *A.*2d 734 (2007) (same); *Mun. Council of the City of Newark v. James*, 183 *N.J.* 361, 371, 873 *A.*2d 544 (2005) (same); *DelaCruz v. Borough of Hillsdale*, 183 *N.J.* 149, 163, 870 *A.*2d 259 (2005) (same); *Cherry Hill Manor Assocs. v. Faugno*, 182 *N.J.* 64, 75, 861 *A.*2d 123 (2004) (same); *Carpenter Tech. Corp. v. Admiral Ins. Co.*, 172 *N.J.* 504, 513, 800 *A.*2d 54 (2002) (same); *Munoz v. N.J. Auto. Full Ins. Underwrit-*

*ing Ass'n,* 145 *N.J.* 377, 388, 678 *A.*2d 1051 (1996) (same); *Bd. of Educ. Of the City of Asbury Park v. Hoek,* 38 *N.J.* 213, 231, 183 *A.*2d 633 (1962) (same); *Prudential Ins. Co. v. Howell,* 29 *N.J.* 116, 124, 148 *A.*2d 145 (1959) (same); *Scatuorchio v. Jersey City Incinerator Auth.,* 14 *N.J.* 72, 87, 100 *A.*2d 869 (1953); *General Pub. Loan Corp. v. Director, Division of Taxation,* 13 *N.J.* 393, 400, 99 *A.*2d 796 (1953) (same); *Fischer v. Fischer,* 13 *N.J.* 162, 170, 98 *A.*2d 568 (1953) (same); *Grogan v. De Sapio,* 11 *N.J.* 308, 323, 94 *A.*2d 316 (1953); *Leeds v. Harrison,* 9 *N.J.* 202, 213, 87 *A.*2d 713 (1952). Yet, today, that is of cold comfort indeed.

Other than engaging in a purely metaphysical discourse, it is well nigh impossible to imagine any plain meaning of the term "home improvement" that includes original construction. If the home is still under construction, where, pray tell, is the home that is to be improved? More concretely, how is one to improve a home that is not yet there? Applied in the context of this case, the core notion advanced by the majority is internally and fatally contradictory.

In the end, the distinction the majority draws defies plain logic. According to the majority's construct, if a home owner contracts with a general contractor to build a home, that general contractor, and his subcontractors, are immune from the CFA's reach because the Legislature separately adopted the HOW Act, and the home-owner must look there for his remedies. However, if the home-owner chooses to forego paying premiums under the HOW Act and either acts as his own general contractor or instead hires a construction manager [1] who contracts, on behalf of the owner, with

---

[1] A construction manager is employed by an owner of a construction project and, on behalf of the owner, engages, supervises the work of, and pays independent contractors, and payment is made for those construction trades by the owner but through the construction manager. *See, e.g., Del. River and Bay Auth. v. York Hunter Const., Inc.,* 344 *N.J.Super.* 361, 363, 781 *A.*2d 1126 (Ch.Div.2001) (describing construction manager functions). Unlike general contractors, construction managers perform no construction activities—save for supervisory work—with their own forces. Stated differently, "[t]he owner, with the assistance of the construction manager, exercises the function of a general contrac-

each of the discrete trades, each of those trade contractors—although working on what is unquestionably the initial construction of a brand-new home—will be deemed to have engaged in "home improvements" and, hence, will be liable under the CFA. Remarkably, the end result in either instance is the same—the construction of a new home—yet the exposure to liability varies wildly. In a different but similar setting, we have held that a party proposing to construct a residence cannot better its legal position merely by electing to act as its own general contractor instead of retaining a general contractor; we made clear that by "having chosen to purchase the design and construction services individually ... [the homeowners] properly are bound by their choices: by electing to assume responsibility for their construction project [they] cannot be heard to complain as to the consequences of their choice." *Daidone v. Buterick Bulkheading*, 191 *N.J.* 557, 569, 924 *A.*2d 1193 (2007). The same result must obtain here.

An illogically pliable legal methodology—one that somehow metamorphoses what indisputably is the construction of new home

---

tor. In a practical sense, however, the owner has delegated this function to the construction manager." *Port Liberte Partners v. Strober Bros., Inc.*, 228 *N.J.Super.* 155, 160, 549 *A.*2d 72 (Law Div.1988). In the abstract,

> [a] construction manager is essentially a high level manager who focuses on ... coordinating the different needs of a project on a large scale. In particular, the construction manager is responsible for maintaining the relationship with all the contractors and subcontractors to ensure the smooth and timely completion of a project.
>
> The most important aspect of the position is that of defining the structure of the project management team and assigning responsibilities to each member. Beyond this, the construction manager arranges and maintains project relationships with the trade contractors and designers associated with particular aspects of the project, including setting timetables for the completion of certain sections and resolving conflicts as they arise.
>
> Beyond coordinating the internal workings of a project, the manager must develop plans to handle external concerns. These include handling equipment and materials suppliers, developing plans with local emergency and fire departments for on-site safety, and risk management.
>
> [University of New Mexico, Department of Civil Engineering, *What is Construction Management?*, available at http://www.unm.edu/̃civil/whatconstmgmt.html.]

into a home improvement—is unsustainable and does nothing but violence to our ordered system of laws. That, however, is the practical result of the majority's reasoning. For those reasons, I respectfully dissent.

*For affirmance as modification*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For reversal*—Justice RIVERA–SOTO—1.