**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0814-17T1

REMOTE RISK MANAGEMENT,
LLC,

     Plaintiff-Respondent,

v.

LOGRASSO BUILDERS,

     Defendant-Appellant,

and

RONALD RAMCHARRA,

     Defendant.

_____

Submitted September 26, 2018 – Decided March 11, 2019

Before Judges Koblitz and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. SC-001124-17.

Santo J. Bonanno, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

Defendant LoGrasso Builders (LoGrasso) appeals from a $2836 Special Civil Part judgment in favor of plaintiff, Remote Risk Management, LLC (Remote), for its installation of cabling at a home LoGrasso constructed for defendant Ronald Ramcharra.[1]  We affirm.

At trial, Remote's managing member, Ronnie Padron, testified that he sent LoGrasso a written estimate of $5404 for the installation of an alarm system.[2] A LoGrasso employee named George orally told him to install the system.  By trial, George no longer worked for LoGrasso.  However, Padron also said he had a verbal contract with "Mr. LoGrasso," apparently referring to company president, John LoGrasso (JLG).

---

[1]  Ramcharra is not a party to the judgment.  The record does not reflect the status of the claim against Ramcharra.  If it is still pending, then the instant appeal would be interlocutory.  See Grow Co. v. Chokshi, 403 N.J. Super. 443, 457-58 (App. Div. 2008) (stating generally, "only an order that finally adjudicates all issues as to all parties is a final order and . . . an interlocutory appeal is permitted only by leave of our appellate courts") (citing R. 2:2-3). However, we choose to decide the appeal, to avoid repetition of effort by the court and appellant.  See Caggiano v. Fontoura, 354 N.J. Super. 111, 125 (App. Div. 2002).

[2]  Although Remote introduced the estimate into evidence, defendant failed to include it in the record on appeal.

A-0814-17T1

Padron testified that once he had LoGrasso's go ahead, he dealt with Ramcharra regarding details of the installation. Ramcharra later "changed his mind" regarding the project, and Remote completed only the cabling. Remote sent an invoice for $2782, including tax. Both Ramcharra and LoGrasso refused to pay, contending the other was responsible.

JLG testified that his company simply referred Remote to Ramcharra, and Remote entered into a contract with Ramcharra, not LoGrasso. JLG maintained that LoGrasso gave Ramcharra a $2500 credit against the purchase price of the home for the alarm system, with the intention that Ramcharra pay for the work.

Remote did not address the estimate or the invoice to LoGrasso. Remote simply sent it to the street address of the new home. Padron testified that Remote worked on several homes for LoGrasso, and that his practice was to send documents to the address of the particular project. He also said that Ramcharra told him he would not pay for the work because of his own ongoing dispute with LoGrasso.

The trial judge held that Remote entered into a contract with LoGrasso, not Ramcharra. The initial conversations and arrangements were between those two parties. Ramcharra's later involvement did not change that relationship.

A-0814-17T1

The court entered judgment in Remote's favor for the invoiced amount plus costs, totaling $2836.

On appeal, defendant presents two arguments. LoGrasso essentially challenges the trial court's finding that Remote entered into a contract with LoGrasso. Alternatively, LoGrasso argues the contract was unenforceable because it was not in writing, as the Consumer Fraud Act (CFA) and the "Home Repairers Act"[3] requires. Unpersuaded, we address the two points in turn.

## A.

We review de novo a trial court's legal determinations regarding contract formation, Kernahan v. Home Warranty Adm'r of Florida, Inc., ___ N.J. ___, ___ (2019) (slip op. at 16, 21), and contract interpretation, Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011). "A contract arises from offer and acceptance and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (addressing claimed oral contract) (quoting W. Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)).

---

[3] We are unaware of any statute with the short title "Home Repairers Act," and LoGrasso provides no citation.

A-0814-17T1

However, if the issues of formation or interpretation involve disputed issues of fact, we defer to the trial court's findings.  Kieffer, 217 N.J. at 223 n.5 (2014).  Here, the trial court credited Padron's testimony that he sent his estimate to LoGrasso; LoGrasso accepted it; and LoGrasso directed Padron to proceed. Thus, the court found both a written offer and an oral acceptance.[4]

In challenging the court's finding, LoGrasso points to the following facts: Remote did not send an invoice addressed to LoGrasso by name; Remote negotiated the specifications of the work with Ramcharra; Remote alleged in its complaint that Ramcharra accepted its work; and Remote never sought acceptance from LoGrasso.  LoGrasso also alleges that Remote was aware of the $2500 credit.

These facts are at best circumstantial evidence that a contract was not formed.  The court was not required to give the facts greater weight than its finding of a written offer and oral acceptance.  Padron testified that he received the initial order from LoGrasso; he spoke to Ramcharra before commencing

---

[4]  We cannot assess whether the estimate was sufficiently definite in its terms because LoGrasso failed to provide it to us.  See Cmty. Hosp. Grp. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (stating an appellate court is "not obliged to attempt review of an issue when the relevant portions of the record are not included").

work only "because they wanted it in a specific way." Ramcharra accepted the work, he did so only with LoGrasso's delegation of authority. Although Remote did not name LoGrasso in its invoice, it did not name Ramcharra either. Padron explained that, as he did on other projects for LoGrasso, he addressed Remote's invoice to the individual street address, intending it for LoGrasso. As for the $2500 credit, Padron logically argued that LoGrasso would have had no reason to give Ramcharra a credit on Remote's behalf, if LoGrasso had not negotiated with Remote.[5]

In sum, based on the trial court's finding of an offer and acceptance, we shall not disturb its conclusion that Remote and LoGrasso formed an oral contract to install the alarm system.

## B.

We are not obliged to reach LoGrasso's newly minted argument that any oral contract between it and Remote is unenforceable under the CFA and the "Home Repairers Act." "It is a well-settled principle that our appellate courts

---

[5] Even assuming, for argument's sake, LoGrasso's claim that Ramcharra was responsible for the amount of the credit, $2500, that still left $2904 – based on the original $5404 estimate – for which Ramcharra would not be responsible.

will decline to consider questions or issues not properly presented to the trial court when the opportunity for such presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). In particular, we may refuse to consider a newly-raised issue if "there is an insufficient factual basis to warrant" our doing so. In re Bd. of Educ. of Boonton, 99 N.J. 523, 536 (1985).

We recognize that, as part of the CFA, N.J.S.A. 56:8-1 to -210, the Contractors' Registration Act (CRA), N.J.S.A. 56:8-136 to -152 generally requires that every "home improvement contract" over $500 shall be in writing, "signed by all parties thereto," and include various essential provisions. N.J.S.A. 56:8-151. Even assuming the CRA is what LoGrasso had in mind by referring to the "Home Repairers Act," it is impossible to determine on this record whether the CRA would apply.

The CRA does not apply to persons required to register pursuant to the New Home Warranty and Builders' Registration Act (New Home Warranty Act), N.J.S.A. 46:3B-1 to -20. N.J.S.A. 56:8-140(a). Also, regulations promulgated under the CRA exempt new home construction from the definition of "home

A-0814-17T1

improvement." N.J.A.C. 13:45A-16.1A.  The Supreme Court construed the New Home Warranty Act in conjunction with the CRA, to provide "a seamless web of protections for the homeowner."  Czar, Inc. v. Heath, 198 N.J. 195, 207 (2009).

In Czar, the Court held that the CRA governed an agreement between a kitchen remodeler and the owner of a house that a different contractor newly built, but which was not yet permitted or occupied.  Id. at 197, 210.  Inasmuch as the remodeler was not registered under the New Home Warranty Act and did not provide a warranty under that statute, the Court reasoned that the remodeler should be subject to the CRA, even though the work was performed on a newly constructed house.  Id. at 208-10.

However, the record before us does not disclose whether Remote registered under the New Home Warranty Act.  Furthermore, unlike Czar, Inc., Remote did not contract with the homebuyer; it contracted with the home builder, LoGrasso.  The CRA applies to a "home improvement contract" which is defined as an "agreement for the performance of a home improvement between a contractor and an owner, tenant or lessee, of a residential or non-commercial property . . . ."  N.J.S.A. 56:8-137.  The record does not reflect whether

LoGrasso was even the title owner when Remote performed the work, let alone the kind of "owner" contemplated by the CRA.

Whether a business-to-business contract is subject to the CFA depends in part on a fact-sensitive analysis of the "nature of the transaction between the two business entities." All the Way Towing, LLC v. Bucks Cty. Int'l, Inc., ___ N.J. ___, ___-___ (2019) (slip op. at 20-21). A critical factor is whether the buyer purchased the goods or services for its own use. Id. at ___ (slip op. at 16); see also Mark A. Sullivan, New Jersey Consumer Fraud, §10:4-1 at 227-229 (2018) (reviewing cases holding that the CFA did not apply to a wholesale purchaser, or reseller); cf. Coastal Grp. v. Dryvit Sys., Inc., 274 N.J. Super. 171 (App. Div. 1994) (applying the CFA to the purchase agreement between a condominium project developer and an owner of a prefabricated wall system).

Noting that "context is important," the Supreme Court recently declined to map the CFA's outer limit. All the Way Towing, ___ N.J. at ___ (slip op. at 16). "We do not suggest that all business-to-business transactions automatically fit the intendment of a sale offered to the public. Here we need not plumb such limits because plaintiffs, as interested members of the public, were purchasing the tow truck with rig for their own use." Ibid.

Consistent with <u>Nieder</u>, we shall not "plumb the limits" of the statute on this sparse record, particularly since LoGrasso did not alert Remote of its CFA claim, and give Remote a fair opportunity to meet it at trial.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0814-17T1