SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**William DeSimone v. Springpoint Senior Living, Inc.** (A-37-22) (087891)

**Argued September 26, 2023 -- Decided January 10, 2023**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers whether the refund provision contained in N.J.S.A. 56:8-2.11 provides relief for all violations of the New Jersey Consumer Fraud Act (CFA), or whether it is limited solely to the food-related misrepresentations expressly proscribed in N.J.S.A. 56:8-2.9, which codified another section of the same legislative act -- L. 1979, c. 347 (Chapter 347) -- that created the refund provision.

Plaintiff William DeSimone and the class of plaintiffs he represents brought suit against defendant Springpoint Senior Living, Inc. (Springpoint). Alleging in relevant part that Springpoint violated the CFA with regard to representations about its entrance fee refund policy, plaintiffs sought the return of "all monies received or collected from" them by Springpoint. Plaintiffs relied on N.J.S.A. 56:8-2.11 in seeking that relief.

Springpoint moved to dismiss, arguing that N.J.S.A. 56:8-2.11 applies only to misrepresentations regarding food, as outlined in Chapter 347, and not to violations of other CFA provisions. The trial judge denied the motion, citing cases that had, in the court's view, "broadly appl[ied] the refund provision." The Appellate Division denied leave to appeal. The Court granted leave to appeal. 253 N.J. 457 (2023).

**HELD:** The refund provision is limited in scope: N.J.S.A. 56:8-2.11 provides relief only to victims of food-related fraud as identified in Chapter 347 and does not extend to all CFA violations. Because the allegations in this matter are unrelated to misrepresentations of the "identity of food," plaintiffs are not entitled to a full refund under N.J.S.A. 56:8-2.11.

1. From its enactment in 1960, the CFA has imposed liability upon those who engage in certain "unlawful practice[s]." See N.J.S.A. 56:8-2. As consumer practices have evolved, the CFA has been repeatedly amended and expanded. In furtherance of its mission to protect consumers, the Legislature enacted Chapter 347 in 1979. Codified at N.J.S.A. 56:8-2.9 to -2.13, Chapter 347 broadened protections for New Jersey consumers by expanding what constitutes an "unlawful practice" to

1

include misrepresentations of the identity of food.  See N.J.S.A. 56:8-2.9.  And Chapter 347 created a refund remedy whereby "[a]ny person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."  N.J.S.A. 56:8-2.11.  (pp. 11-14)

2.  Chapter 347's refund provision contains key language suggesting its scope is limited:  "Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."  N.J.S.A. 56:8-2.11 (emphases added).  The plain meanings of "within" and "declared herein" suggest that N.J.S.A. 56:8-2.11 is limited in application to the provisions of Chapter 347.  In other supplementary CFA statutes, the Legislature has used similar language to that found in N.J.S.A. 56:8-2.11 -- "the within act" -- to explicitly distinguish those supplementary acts from the CFA in its entirety.  Furthermore, Chapter 347 is not the only conduct-specific supplementary statute to provide additional rights and remedies, including consumer refunds.  If the refunds authorized in each supplementary statute applied to the CFA at large, there would be no need for multiple refund provisions.  The Court explains how any lingering ambiguity as to the scope of Chapter 347's refund provision is unmistakably settled by the statute's legislative history.  And the Court notes that construing N.J.S.A. 56:8-2.11 to apply only to violations of N.J.S.A. 56:8-2.9 and not to the entire CFA avoids awarding damages in an amount disproportionate to the harm suffered, in keeping with the Court's duty to interpret a statute to avoid running afoul of constitutional protections.  (pp. 15-19)

3.  Plaintiffs allege that Springpoint engaged in deceptive advertising practices and provided misleading disclosure statements regarding Springpoint's return policy of resident entrance fees under its "90% refundable plan."  Those allegations pertain entirely to misrepresentations about fees charged by a senior living facility.  None of plaintiffs' allegations are related to misrepresentations of food.  Thus, the claims are not governed by N.J.S.A. 56:8-2.9 and the refund provision in -2.11 does not apply.  The Court reviews the cases on which plaintiffs rely in arguing that N.J.S.A. 56:8-2.11 applies to the entire CFA.  Noting that the cases focus on other issues and that their references to N.J.S.A 56:8-2.11 were background statements or dicta, the Court finds that none of the isolated references to Chapter 347's provisions in its previous cases suggest that the food-related refund remedy applies broadly to all CFA violations.  And the Court expressly holds here that it does not.  (pp. 20-22)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-37 September Term 2022
087891

William DeSimone, as Executor
of the Estate of Evelyn DeSimone,
deceased, individually in such capacities
and on behalf of all others
similarly situated,

Plaintiff-Respondent,

v.

Springpoint Senior Living, Inc.,
Springpoint at Monroe Village, Inc.,
Springpoint at Montgomery, Inc.,
Springpoint at Crestwood, Inc.,
Springpoint at Meadow Lakes, Inc.,
and Springpoint at the Atrium, Inc.,

Defendants-Appellants.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| September 26, 2023 | January 10, 2024 |

Bruce W. Clark argued the cause for appellants (Clark
Michie and Morgan Lewis & Bockius, attorneys; Bruce
W. Clark, Christopher J. Michie, Stephanie R. Feingold,
and Jamie Huffman, on the briefs).

Eric S. Pasternack argued the cause for respondent
(Cohen, Placitella, & Roth and Mayer Law Group,
attorneys; Eric S. Pasternack, Christopher M. Placitella,

1

Michael Coren, William L. Kuzmin, and Carl Mayer, on the briefs).

Alex R. Daniel argued the cause for amicus curiae New Jersey Civil Justice Institute (New Jersey Civil Justice Institute, attorneys; Anthony M. Anastasio, of counsel, and Alex R. Daniel, of counsel and on the brief).

Edward J. Fanning, Jr., argued the cause for amici curiae New Jersey Business & Industry Association, New Jersey Chamber of Commerce, and Commerce and Industry Association of New Jersey (McCarter & English, attorneys; Edward J. Fanning, Jr., David R. Kott, and Leroy E. Foster, of counsel and on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In 1960, the Legislature enacted the New Jersey Consumer Fraud Act (CFA) to protect New Jersey consumers from unconscionable and deceptive commercial practices. Over time, to achieve that goal, the Legislature has expanded consumer protections through various supplemental statutes, one of which is central to this appeal.

Striving to combat food-related fraud, the Legislature enacted L. 1979, c. 347 (Chapter 347), codified at N.J.S.A. 56:8-2.9 to -2.13. In this class action case, we address whether the refund provision contained in Section Three of Chapter 347, codified at N.J.S.A. 56:8-2.11, provides relief for all CFA violations, or whether it is limited solely to the food-related misrepresentations

2

expressly proscribed in Section One of Chapter 347, codified at N.J.S.A. 56:8-2.9.

We hold that the refund provision is limited in scope:  N.J.S.A. 56:8-2.11 provides relief only to victims of food-related fraud as identified in Chapter 347 and does not extend to all CFA violations.  Here, the alleged conduct deals with misrepresentations of a senior living facility's entrance fee, not food. Because those allegations are unrelated to misrepresentations of the "identity of food," plaintiffs are not entitled to a full refund of their entrance fees under N.J.S.A. 56:8-2.11.

We therefore reverse the order under review and enter partial summary judgment in defendants' favor, dismissing with prejudice the part of plaintiffs' complaint that seeks refund damages under N.J.S.A. 56:8-2.11.  We remand for further proceedings.

## I.

### A.

We derive the pertinent facts from the allegations contained in plaintiffs' amended complaint.

In February 2009, plaintiff William DeSimone and his siblings moved their mother, Evelyn DeSimone, into Springpoint Monroe Village, one of the "Continuing Care Retirement Communities" owned and operated by defendant

Springpoint Senior Living, Inc. (Springpoint).  In addition to monthly service fees and "other fees" relating to activities, incidentals, and medical care, Springpoint charges an entrance fee for residents.  The amount of the entrance fee varies from $84,000 to over $700,000, depending on the Springpoint facility and living accommodation unit.

Springpoint offers two different "entrance fee refund" plans -- a "traditional plan" and the plan relevant to this appeal, a "90% refundable plan."  The "90% refundable plan" is available upon election to pay a higher entrance fee.  Through oral statements, marketing, and sales materials, Springpoint represented that under the "90% refundable plan," 90% of the entrance fee a resident paid, minus applicable deductions for medical care provided, would be refunded to the resident's estate when the resident dies or moves out of the facility.  In its disclosure statements, Springpoint likewise stated that the "90% refundable plan" "allows for up to 90% of the entrance fee to be refunded."

Those disclosures, however, also stated that the entrance fee refund policy is explained in greater detail in an attached "Residence & Care" agreement.  Plaintiffs allege that the additional information is found "buried" on page 20, in Section VI of that agreement.  They assert that, "contrary to all other prior representations and descriptions by Springpoint, including the

4

Disclosure Statement," the language on page 20 provided "that the 90% refund would be paid without interest based on the <u>lesser of the original entrance fee paid or the subsequent resident's entrance fee</u>," subject to certain additional deductions. (emphasis added).

The DeSimone family paid an entrance fee totaling $159,000 and selected the "90% refundable plan." According to the complaint, the DeSimone family believed that, if Evelyn moved out of the facility or passed away, 90% of the $159,000 paid entrance fee would be refunded, minus incurred medical costs. After Evelyn passed away in April 2010, Springpoint sent William a check for $80,136, accounting for approximately 50% of the entrance fee paid. When William inquired about the amount of the refund, Springpoint responded that the refund had been calculated based on the entrance fee paid by the resident who subsequently moved into Evelyn's unit. That resident paid an entrance fee of $127,000, and Springpoint calculated the refund based on that lesser amount in keeping with Section VI of the "Residence & Care" agreement.

Plaintiffs allege that the DeSimone family was unaware of the "highly material 'lesser than' caveat" limiting the entrance fee refund policy because it was "buried on page 20 in the lengthy Residence and Care Agreement." They assert that had they known of the limiting provision, the DeSimone family

5

would not have moved Evelyn into Springpoint Monroe Village. Plaintiffs further allege that Springpoint failed to disclose that it actively offered substantial entrance fee discounts to attract prospective residents -- discounts that, in turn, could affect the prior resident's refund under the "90% refundable plan." They contend that the circumstances alleged by the DeSimone family are common to the class.

Relevant to the present appeal, plaintiffs asserted two counts of CFA violations: (1) "Misleading Advertisements/Marketing Collateral Materials" and (2) "Misleading Disclosure Statement[s]." On those two counts, and relying on N.J.S.A. 56:8-2.11, plaintiffs sought damages from Springpoint "to disgorge and make restitution . . . by repaying all monies received or collected from" plaintiffs. Based on this language, plaintiffs sought to recover not only the full refunds that they claim they were entitled to receive under the "90% refundable plan," but also all money that each resident paid for the rental of a unit and for the services that Springpoint provided.

In June 2021, the trial judge certified the class and appointed plaintiff William DeSimone as a class representative.

B.

In June 2022, Springpoint moved for judgment on the pleadings under Rule 4:6-2, and/or partial summary judgment under Rule 4:46, to dismiss

6

plaintiffs' claims for a full refund under N.J.S.A. 56:8-2.11. Springpoint argued that N.J.S.A. 56:8-2.11 applies only to misrepresentations regarding food, as outlined in Chapter 347, and not to violations of other CFA provisions. The trial judge denied Springpoint's motion, stating that she could not "ignore the precedential cases" that plaintiffs cited -- Lemelledo v. Beneficial Management Corp. of America, 150 N.J. 255 (1997), Weinberg v. Sprint Corp., 173 N.J. 233 (2002), and Dugan v. TGI Fridays, Inc., 231 N.J. 24 (2017). According to the trial judge, those cases "broadly appl[ied] the refund provision."

Springpoint moved for leave to appeal from the order denying its motion for partial dismissal of the complaint. The Appellate Division denied the motion, concluding that interlocutory "review [was] not necessary in the interests of justice."

This Court granted leave to appeal. 253 N.J. 457 (2023). We also granted motions from the New Jersey Civil Justice Institute (NJCJI), and from the New Jersey Business and Industry Association, the New Jersey Chamber of Commerce, and the Commerce and Industry Association of New Jersey (collectively, NJBIA), to appear as amici curiae.

7

## II.

Springpoint asks us to reverse the trial judge's order and grant partial summary judgment in its favor. Springpoint argues that the words "within" and "herein" found in N.J.S.A. 56:8-2.11 limit the refund provision to acts proscribed in Chapter 347 and not to violations of the broader CFA. Springpoint further contends that the legislative history surrounding N.J.S.A. 56:8-2.11 supports that limited reading. In Springpoint's view, the trial judge relied on dicta contained in Lemelledo, Weinberg, and Dugan -- cases that did not address the scope of the refund remedy at issue in this appeal.

Plaintiffs argue that the word "act" in N.J.S.A. 56:8-2.11 refers to the entire CFA, relying on Lemelledo and Sun Chemical Corp. v. Fike Corp., 243 N.J. 319 (2020). Plaintiffs contend that, in those cases, this Court held that the phrase "this act" referred to the CFA generally when construing the cumulative remedies provision found in Section Five of Chapter 347, codified at N.J.S.A. 56:8-2.13. Plaintiffs also assert that Lemelledo, Weinberg, and Dugan constitute binding precedent and that the Legislature's implicit acquiescence to those decisions confirms that the refund provision applies to all violations of the CFA. Lastly, plaintiffs maintain that, so long as a CFA plaintiff pleads an ascertainable loss that can withstand a motion for summary judgment, other CFA remedies (like refunds) are available.

8

NJCJI supports Springpoint's legal contentions and argues that Chapter 347 did not create a "generally applicable" refund remedy for all CFA violations. NJCJI asserts that allowing otherwise would lead to results where a plaintiff would receive a "windfall unmoored from their actual losses." NJCJI emphasizes that New Jersey has adopted a comprehensive statutory and regulatory framework to monitor and regulate retirement communities. It asserts that the Legislature, in enacting a refund remedy and self-help cause of action to combat misrepresentations in the food industry, eliminated the need for the State to inspect menus and kitchens. That policy rationale, according to NJCJI, does not extend to the heavily regulated retirement communities in New Jersey.

NJBIA also supports Springpoint, echoing many of Springpoint's arguments, specifically that the "within" language in N.J.S.A. 56:8-2.11 limits the scope of the refund remedy. NJBIA contends that interpreting the refund provision to apply beyond the food industry to claims under the entire CFA could impose monetary penalties wholly removed from a plaintiff's actual damages and thereby run afoul of clear constitutional protections against excessive damages.

## III.

### A.

We review the denial of summary judgment de novo.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  Summary judgment should be granted "if the discovery and any affidavits 'show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013) (quoting R. 4:46-2(c)).  When "only a question of law remains, this Court affords no special deference to the legal determinations of the trial court."  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

We also review the interpretation of a statute's meaning de novo, Nicholas v. Mynster, 213 N.J. 463, 478 (2013).  We utilize our "established rules of statutory construction" in interpreting the CFA, and "[o]ur goal 'is to determine and effectuate the Legislature's intent.'"  Perez, 215 N.J. at 399 (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)).

In doing so, "we first examine the statute's plain language, giving its 'words their ordinary meaning and significance,' and reading those words in the context of 'related provisions so as to give sense to the legislation as a whole.'"  Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  If the

10

statutory language is ambiguous and "leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

Turning to the CFA, we construe it "in light of its objective to greatly expand protections for New Jersey consumers." D'Agostino v. Maldonado, 216 N.J. 168, 183 (2013) (internal quotations omitted). The CFA is remedial legislation, which the "courts liberally enforce . . . to fulfill its objective to protect consumers from prohibited unconscionable acts by sellers." All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc., 236 N.J. 431, 434 (2019). "But while liberality of construction of remedial legislation is desirable, we cannot ignore the plain meaning of the language employed by the Legislature . . . ." Wormack v. Howard, 33 N.J. 139, 142 (1960).

### B.

The Legislature enacted the CFA in 1960, Perez, 215 N.J. at 399, "to 'combat sharp practices and dealings that victimized consumers by luring them into purchase through fraudulent or deceptive means,'" D'Agostino, 216 N.J. at 183 (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 16 (1994)). From the outset, the CFA imposed liability upon those who engaged in certain "unlawful

11

practice[s]." See L. 1960, c. 39 (codified at N.J.S.A. 56:8-2). In its present form, N.J.S.A. 56:8-2 provides:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .
>
> [N.J.S.A. 56:8-2 (emphasis added).]

As consumer practices have evolved, the Legislature has amended and supplemented the CFA to provide additional protections to consumers, including what is arguably the greatest expansion of the CFA -- a 1971 amendment authorizing a private right of action. See L. 1971, c. 247 § 7 (codified at N.J.S.A. 56:8-19); see also Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245-46 (2005) (explaining how "[i]t is a well-known fact that the CFA initially conferred enforcement power exclusively on the Attorney General" but was amended to add a private right of action "[t]o augment . . . enforcement efforts").

In addition to a private cause of action, the CFA has "been 'repeatedly amended and expanded . . . often by adding sections to address particular areas

of concern.'" Sun Chem. Corp., 243 N.J. at 330 (omission in original) (emphasis added) (quoting Czar, Inc. v. Heath, 198 N.J. 195, 201 (2009)). The Legislature has broadened the definition of an "unlawful practice" under the CFA to address specific practices as they arise or become prevalent, including the following: wrongfully implying association with a department or agency of the federal or state government, N.J.S.A. 56:8-2.1; false advertising, N.J.S.A. 56:8-2.2; selling expired non-prescription drugs, infant formula, or baby food, N.J.S.A. 56:8-2.27(a); placing unsafe children's products "in the stream of commerce," N.J.S.A. 56:8-53.2(a); labeling food as kosher without disclosing the basis for that representation, N.J.S.A. 56:8-63; and falsely presenting oneself as a certified industrial hygienist, N.J.S.A. 56:8-84.

In furtherance of its mission to protect consumers, the Legislature enacted the supplemental statute at issue in this appeal, L. 1979, c. 347, codified at N.J.S.A. 56:8-2.9 to -2.13. Chapter 347 broadened protections for New Jersey consumers by expanding what constitutes an "unlawful practice" to include misrepresentations of the identity of food:

> It shall be an unlawful practice for any person to misrepresent on any menu or other posted information, including advertisements, the identity of any food or food products to any of the patrons or customers of eating establishments including but not limited to restaurants, hotels, cafes, lunch counters or other places where food is regularly prepared and sold for consumption on or off the premises . . . .

13

[N.J.S.A. 56:8-2.9 (emphases added).]

Chapter 347 defines when an act constitutes a misrepresentation of the identity of food or food products. For example, a food product is misrepresented if "served, sold, or distributed under the name of another . . . food product." N.J.S.A. 56:8-2.10(c).

Importantly, Chapter 347 created a refund remedy whereby "[a]ny person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful." N.J.S.A. 56:8-2.11. The refund may be recovered in a private action, id. at -2.12, and may be awarded "in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State," id. at -2.13.

Our focus in this case is the scope of N.J.S.A. 56:8-2.11. Specifically, we must determine whether the refund it authorizes applies only to violations of the concurrently enacted rules concerning misrepresentations of the identity of food, or whether -2.11 fundamentally expands the remedies available for any violation of the CFA to include a refund.

14

IV.

We hold that the refund provision in N.J.S.A. 56:8-2.11 is limited and provides relief only to victims of the unlawful acts dealing with food-related misrepresentations proscribed in N.J.S.A. 56:8-2.9.  The refund remedy does not apply to other unlawful acts under the CFA, and it does not apply to the CFA generally.  Thus, plaintiffs are not entitled to the full refund of their entrance fees, or to a refund of the money that they paid for the rental of a unit, or for services provided to them during their residence at a Springpoint facility under N.J.S.A. 56:8-2.11.

A.

Chapter 347's refund provision contains key language suggesting its scope is limited:  "Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."  N.J.S.A. 56:8-2.11 (emphases added).

The term "within" is typically used "to indicate [a] situation or circumstance in the limits of or compass of," or "not beyond the quantity, degree or limitations of," a particular matter.  Webster's New Collegiate Dictionary 1347 (8th ed. 1973).  The plain meaning of "within" therefore implies that N.J.S.A. 56:8-2.11 is limited in application to the provisions of Chapter 347.  The same is true of the phrase "declared herein."  N.J.S.A. 56:8-

15

2.11. "Declare" means "to make clear" or "to make known formally or explicitly." Webster's at 294. "Herein" is defined as "in this." Id. at 535. Thus, the plain meaning of "declared herein," when read in the context of N.J.S.A. 56:8-2.11 -- "any practice declared herein to be unlawful" -- suggests that N.J.S.A. 56:8-2.11 refers to any practice whose illegality was declared, or made known, in the provisions adopted within Chapter 347.[1]

In other supplementary CFA statutes, the Legislature has used similar language to that found in N.J.S.A. 56:8-2.11 -- "the within act" -- to explicitly distinguish those supplementary acts from the CFA in its entirety. See, e.g., L. 1966, c. 39, § 1 (codified at N.J.S.A. 56:8-13) ("Any person who violates any of the provisions of the act to which this act is a supplement shall . . . be liable to a penalty . . . ."); L. 1969, c. 131, § 2 (codified at N.J.S.A. 56:8-2.3) ("the act to which this act is a supplement"); L. 1971, c. 247, § 3 (codified at N.J.S.A. 56:8-15) ("under this act and the act hereby amended and supplemented"); L. 1971, c. 247, § 8 (codified at N.J.S.A. 56:8-20) ("of this act, or the act hereby amended or supplemented"); L. 1973, c. 308, § 2

---

[1] We also note that the plain language of N.J.S.A. 56:8-2.11 appears to include a causation requirement that limits the refund allowable under N.J.S.A. 56:8-2.11 to "all moneys acquired by means of any practice declared herein to be unlawful." Thus, a consumer would be entitled to a refund only for the money that was "acquired by" or obtained through any unlawful practice that was "declared herein."

16

(codified at N.J.S.A. 56:8-2.6) ("For the purposes of this act, each day for which the total selling price is not marked in accordance with the provisions of this act for each group of identical merchandise shall constitute a separate violation of this act and the act of which this act is a supplement.").

Furthermore, Chapter 347 is not the only conduct-specific supplementary statute to provide additional rights and remedies, including consumer refunds.  See, e.g., N.J.S.A. 56:8-2.18 ("A retail mercantile establishment violating any provision of this act shall be liable to the buyer, for up to 20 days from the date of purchase, for a cash refund or a credit, at the buyer's option . . . ."  (emphasis added)); N.J.S.A. 56:8-71(a) ("If, within the periods specified in section 3 of this act, the dealer or his agent fails to correct a material defect of the used motor vehicle . . . the dealer shall repurchase the used motor vehicle and refund to the consumer the full purchase price . . . ." (emphasis added)); N.J.S.A. 56:8-95(i)(1) (regarding pet purchase protections, a consumer can select a number of different remedies, including "[t]he right to return the animal and receive a full refund of the purchase price" (emphasis added)).  If the refunds authorized in each supplementary statute applied to the CFA at large, there would be no need for multiple refund provisions.

Although the plain language of N.J.S.A. 56:8-2.11 indicates that the refund remedy applies to the practices proscribed in Chapter 347 relating to the

17

misrepresentation of food products, it does not completely resolve whether N.J.S.A. 56:8-2.11 is <u>limited</u> to those practices. Any lingering ambiguity as to the scope of Chapter 347's refund provision is, however, unmistakably settled by the statute's legislative history.

In conditionally vetoing the proposed bill, Governor Brendan Byrne expressed concern that it could require state agencies "to inspect menus and commercial kitchens or to taste test products at a time when other budgetary priorities exist." <u>Governor's Veto Statement to S. 1408</u> (Dec. 10, 1979). Governor Byrne "recommend[ed] a different approach i.e. a self help remedy which would provide <u>restitution</u> to the defrauded customer or patron." <u>Ibid.</u> (emphasis added). Specifically, he recommended that the Senate insert a refund provision containing the following language: "Any person violating the provisions of the within act shall be liable for a refund of all monies acquired by means of any practice declared herein to be unlawful." <u>Ibid.</u> That language is identical to the codified refund provision, N.J.S.A. 56:8-2.11.

After the bill passed, a press release reaffirmed Governor Byrne's recommendation "that defrauded consumers be <u>entitled to a refund if the eating establishment</u> is found to be in violation of the act." Office of the Governor, <u>Press Release: Statement upon Signing S. 1408</u> (Jan. 24, 1980) (emphasis

added).  Significantly, the unlawful practices proscribed in Chapter 347 all deal with food-related misrepresentations.

A statement by the Assembly Commerce, Industry and Professions Committee makes clear that the phrase "this act" in the cumulative remedy provision, N.J.S.A. 56:8-2.13 -- which was part of Chapter 347 -- refers only to that bill, not the entire CFA.  See A. Com., Indus. & Pros. Comm. Statement to S. 1408 (June 11, 1979) ("[T]he rights, remedies and prohibitions accorded by the bill are in addition to and cumulative of any other right, remedy or prohibition . . . ."  (emphasis added)).  The statement also provides that "[t]his legislation is very specific," ibid., proving that "the within act" language in N.J.S.A. 56:8-2.11 refers solely to Chapter 347.

Finally, we note that construing N.J.S.A. 56:8-2.11 to apply only to violations of N.J.S.A. 56:8-2.9 and not to the entire CFA avoids awarding damages in an amount disproportionate to the harm suffered.  To the extent plaintiffs seek a refund under -2.11 of all monies paid to Springpoint, including their entrance fees, monthly fees, and "other fees," such an award would be vastly disproportionate to the harm alleged -- deceptive entrance fee disclosure statements.  And it is our duty to interpret a statute to avoid running afoul of constitutional protections.  See Whirlpool Props., Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 151 (2011).

19

Against that backdrop, an analysis of the facts of this case is straightforward. We hold that plaintiffs are not entitled to relief under N.J.S.A. 56:8-2.11.

Plaintiffs allege in their amended complaint that Springpoint engaged in deceptive advertising practices and provided misleading disclosure statements regarding Springpoint's return policy of resident entrance fees under its "90% refundable plan." Those allegations pertain entirely to misrepresentations about fees charged by a senior living facility. None of plaintiffs' allegations are related to misrepresentations of food. Thus, the claims are not governed by N.J.S.A. 56:8-2.9 and the refund provision in -2.11 does not apply.

Moreover, any reliance on Lemelledo, Weinberg, Dugan, and Sun Chemical to support the proposition that N.J.S.A. 56:8-2.11 applies to the entire CFA is misplaced.

In Lemelledo, the principal issue was "whether the [CFA] applies to lenders who engage in 'loan packing.'" 150 N.J. at 260. In providing a background discussion of the CFA, this Court noted that the CFA "provides individual consumers with a cause of action to recover refunds," citing N.J.S.A. 56:8-2.11 to -2.12 for that proposition. Id. at 264. N.J.S.A. 56:8-2.11 was not otherwise discussed, nor was that provision relevant to our holding in

Lemelledo. The single background statement cannot reasonably be read to support the proposition that, because the Legislature provided for a refund when an individual misrepresents the identity of food, it intended to include a refund for every type of transaction that falls under the ambit of the CFA.

Similarly, our focus in Weinberg was not on N.J.S.A. 56:8-2.11. In that case, we reaffirmed that a private party must plead an ascertainable loss to have standing under the CFA. 173 N.J. at 237. In our discussion of the CFA's history in that case, this Court noted that the CFA "was amended to permit individual consumers to bring private actions to recover refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble damages for violations, N.J.S.A. 56:8-19." Id. at 248 (citing Lemelledo, 150 N.J. at 264). We continued by explaining that the CFA "focuses on allowing individual consumers to recover refunds for losses," citing again to N.J.S.A. 56:8-2.11 to -2.12. Id. at 249. However, our citations to the refund provision were included in our background discussion of the CFA; the statement was dicta, as those provisions were not necessary to the holding.

In Dugan, we focused on class certification issues in relation to CFA claims. 231 N.J. at 34-35. Similar to Lemelledo, as background, we noted that "the Legislature amended the CFA 'to permit individual consumers to bring private actions to recover refunds, N.J.S.A. 56:8-2.11 to -2.12, and treble

21

damages for violations, N.J.S.A. 56:8-19.'" Id. at 50-51 (quoting Weinberg, 173 N.J. at 248). N.J.S.A. 56:8-2.11 was not further discussed and was not relevant to the outcome in Dugan.

And in Sun Chemical, a case dealing with an alleged defective "explosion isolation and suppression system," the primary issue was whether CFA claims can co-exist with claims under the Products Liability Act. 243 N.J. at 324-26. The Court in Sun Chemical did not specifically analyze N.J.S.A. 56:8-2.11. We instead referenced the cumulative remedy provision, N.J.S.A. 56:8-2.13, enacted alongside the refund remedy in Chapter 347.

In short, none of the isolated references to Chapter 347's provisions in our previous cases suggest that the food-related refund remedy applies broadly to all CFA violations. We expressly hold here that it does not.

## V.

We reverse the denial of Springpoint's motion for partial dismissal of the amended complaint, enter partial summary judgment dismissing with prejudice plaintiffs' claims seeking refund damages under N.J.S.A. 56:8-2.11, and remand to the trial court for further proceedings.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.

22