**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0372-24

M.V.N. HOMES, INC., a
Corporation of the State of
Jersey,

     Plaintiff-Appellant,

v.

MOHAMED ALY and
REHAM ABDELFATTAH,

     Defendants-Respondents.

_____

Submitted April 20, 2026 – Decided June 8, 2026

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2809-17.

Batcha & Batcha, PC, attorneys for appellant (F. Bradford Batcha, on the briefs).

Robbins & Robbins, LLP, attorneys for respondents (Spencer B. Robbins, on the brief).

PER CURIAM

This appeal in a long-ongoing construction dispute arises from the trial court's findings after a seven-day, non-jury trial that plaintiff/counterclaimant-appellant MVN Homes, Inc. ("the builder") violated the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -227, and awarded defendants/counterclaimants-respondents Mohamed Aly and Reham Abdelfattah ("the homeowners") $9,792 in treble damages and an additional $9,525.52 in related attorney's fees and costs under the CFA, for a total of $19,317.25. The trial court rejected the builder's breach of contract claims against the homeowners, and, for different reasons, the homeowners' opposing breach of contract claims against the builder.

The underlying facts and procedural history are well-known to the parties and need not be stated here comprehensively. The homeowners are a married couple who, in the fall of 2014, purchased three acres of land in Millstone, with the intention of building a new single-family home and relocating there. The builder is a corporation led by its president, Murtaza Khan, which is licensed by the Department of Community Affairs ("DCA") to construct new homes within the State.

Over eleven years ago in November 2014, the homeowners entered into a three-page contract with the builder to construct a new home on their lot. The builder drafted the contract. Among other things, the contract specified that:

(1) the homeowners agreed to pay the builder $360,000 for the home's construction; (2) five percent of that amount was to be paid to the builder as an initial deposit, with additional progress payments to be made pursuant to the construction payment schedule developed by the homeowners' chosen bank; and (3) all work on the house was to be substantially completed by the builder "no later than 250 days after the work commences," subject to unanticipated delays in construction caused by events outside of the builder's control, including those related to adverse weather conditions. The contract contained no "time is of the essence" clause.

Originally, the builder had told the homeowners that construction was anticipated to begin in late April 2015, with an expected completion date sometime in January 2016. However, because the homeowners were unable to secure financing until late July 2015, work on the project did not begin until July 28, 2015.

In or around the latter part of 2015, the builder apparently suspended work on the construction of the homeowners' new home. Allegedly, the builder became increasingly unresponsive to the homeowners' inquiries regarding the status of the work that had yet to be completed, with the builder citing cold weather as the reason for halting construction. Work resumed in March 2016,

A-0372-24

but the relationship between the parties deteriorated thereafter, due in part to the builder's ongoing alleged lack of communication and continued project delays, as well as the homeowners' own periodic withholding of payments owed to the builder.

In the spring of 2016, the homeowners listed their then-residence for sale. They accepted an offer from a buyer, with a closing date of June 6, 2016. As the builder had yet to complete construction on their new home, the homeowners temporarily moved into an Airbnb and kenneled their pet dog, costing them a total of $3,264 for the period that they were unable to take occupancy.

Months later, at some point in time during the fall of 2016, the homeowners provided the builder with a punch-list of many items. By the time that litigation commenced, this number would grow to thirty-four specific punch-list items.

On December 7, 2016, the homeowners obtained a temporary Certificate of Occupancy ("C.O."), which allowed them to move into their new home. A final C.O. was issued the following month on January 9, 2017.

When all was said and done, 498 days had lapsed between the time that construction first began in June 2015 and December 2016, when the homeowners took occupancy.

A-0372-24

In February 2017, the builder filed a construction lien against the homeowners' property, claiming a sum of $72,730 the homeowners allegedly still owed under their contract. One month later, a state-appointed lien arbitrator approved a lien in the builder's favor for $56,438, which the homeowners thereafter paid.

The homeowners next filed a warranty claim under the DCA's New Home Warranty Program ("NHWP") in May 2017, alleging that the thirty-four punch-list items had yet to be addressed by the builder in a satisfactory manner.

After a hearing, the DCA's Bureau of Homeowner Protection issued a written decision on September 12, 2017, ruling in favor of the homeowners for half (seventeen) of the thirty-four warranty claims. As to the seventeen other claims that were not granted, the DCA determined that nine of those seventeen claims comprised "incomplete" items and/or "contractual disputes" that were beyond the purview of the NHWP program. Neither party appealed the DCA's decision.

In June 2017, the builder filed a breach-of-contract suit against the homeowners in the Law Division, seeking to recover the remaining balance it claimed was owed after the lien had been satisfied. The following month, the homeowners filed counterclaims of their own against the builder, broadly

A-0372-24

alleging the builder's work to have been untimely, improperly completed, and performed in an unworkmanlike manner.

After the lawsuit lingered on the docket for six-and-a-half years with failed efforts to arbitrate or settle the case, the court heard the builder's motion to dismiss the homeowners' counterclaims. In an oral decision on February 16, 2024, a pretrial judge permitted the homeowners to pursue litigation only as to the nine specific punch-list item claims previously identified by the DCA as being "incomplete and/or contractual disputes." The pretrial judge precluded the homeowners from litigating damages for all other punch-list item-related claims.

About a week after the pretrial judge's decision, on February 27, 2024, a different judge who was assigned to try the case ("the trial judge") denied two motions in limine filed by the builder. First, the trial judge denied the motion to limit testimony to only those specific claims that the pretrial judge had deemed viable in her February 16, 2024 order, advising that all of the homeowners' arguments could come in and be "cleaned up," in context, at the end of the trial. Second, the judge declined to bar any documents the homeowners supplied after the Discovery End Date had expired, reasoning that the builder's current and previous counsel had maintained access to those

A-0372-24

documents "for over five years" and finding that there was no prejudice to the builder.

The bench trial took place over seven intermittent days in 2024. The builder presented testimony from MVN's president, Khan. Both homeowners testified on their own behalf, and they also called a construction expert.

In an oral decision issued on June 27, 2024, the trial judge found MVN's president Khan and homeowner Aly to be not credible in many respects, while homeowner Abdelfattah to be at least partially credible as to several discrete issues. The judge also found the homeowners' construction expert to be "underwhelming" due to his apparent lack of preparation, thus according his testimony virtually no weight.

As we noted above, the trial judge awarded the homeowners treble damages totaling $9,792, predicated on the builder having committed an unconscionable act under the CFA by causing delay in the construction of the homeowners' new home. Aside from that award, the judge further held that neither the homeowners nor the builder had proven they had sustained any other compensable damages in this case under any other theory of liability.

A-0372-24

Approximately one month later, the trial judge awarded the homeowners an additional $9,525.25 in attorney's fees and costs under the CFA in a separate order, severely reducing their claim for such fees and costs of $37,280.55.

This appeal by the builder ensued. The homeowners have not cross-appealed.

On appeal, the builder contends, among other things, that the trial court: (1) incorrectly applied the CFA, claiming it is statutorily exempt from the requirements of that statute; (2) erred in finding it engaged in unconscionable conduct under the CFA, and that the delays beyond the agreed-upon contractual 250-day timeline did not amount to fraudulent inducement; (3) failed to consider the homeowners' own alleged material breach of contract by neglecting to pay it in a timely fashion, which the builder further argues excuses any alleged delay or incomplete performance on its part; and (4) did not properly recognize that construction delays were justified by weather conditions and owner-requested changes, and therefore do not constitute consumer fraud.

In reviewing these arguments in this non-jury context, our appellate review is informed by several guiding principles. "'Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review[.]'" 160 W. Broadway Assocs., LP v. 1 Mem'l Drive,

8

A-0372-24

LLC, 466 N.J. Super. 600, 610 (App. Div. 2021) (quoting Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150, 169 (2011)).  """[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]"""  Seidman, 205 N.J. at 169 (quoting In re Trust Created by Agreement Dated Dec. 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974))).  "'Deference is especially appropriate when [as here] the evidence is largely testimonial and involves questions of credibility.'"  Cumberland Farms, Inc. v. New Jersey Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (quoting Seidman, 205 N.J. at 169).  Rulings on pure questions of law, however, are reviewed on appeal de novo.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We also are mindful of general principles for considering post-trial claims of error and demands for appellate correction of such alleged errors.  As Rule 2:10-2 instructs, "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ."  See, e.g., Willner v. Vertical Reality, Inc., 235 N.J. 65,

9

79 (2018) (applying this principle in a civil context, noting that even if an error is brought to the attention of the trial court, it will be not set aside if the error, in retrospect, is harmless); Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 318 (2006) (similarly applying the rule to a civil trial). We generally apply a more rigorous approach in evaluating claims of constitutional error. See, e.g., State v. Castagna, 187 N.J. 293, 312 (2006). No claims of constitutional error are presented here.

Having considered the parties' arguments in light of these principles, we affirm the final judgment, as the builder has not demonstrated sufficient grounds to vacate or alter the outcome attained by the trial judge. We add the following brief comments.

The trial judge properly rejected the builder's argument that the CFA categorically does not apply to a builder's conduct in the construction of a new home. The builder relies on the New Home Warranty Act ("NHWA"), N.J.S.A. 46:3B-1 to -20, to exempt itself from CFA liability.

The NHWA states that "[a] builder of a new home shall be liable to any owner thereof during the time period when the new home warranty . . . is applicable to the home for any defect therein which is covered by the warranty in accordance with its terms and conditions." N.J.S.A. 46:3B-4. A "builder" is

10

defined by that statute as "any individual, corporation, partnership or other business organizations engaged in the construction of new homes."  N.J.S.A. 46:3B-2(f).  Likewise, a "new home" is defined as "any dwelling unit not previously occupied, excluding dwelling units constructed solely for lease."  N.J.S.A. 46:3B-2(d).

Of particular relevance here, N.J.S.A. 46:3B-9 within the NHWA declares that: "[n]othing contained herein shall affect other rights and remedies available to the owner.  The owner shall have the opportunity to pursue any remedy legally available to the owner.  However, initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies."

In New Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, 501 (App. Div. 1985), we held that "the [CFA] is applicable to a custom builder who uses substandard material in the construction of a house."  We further noted that:

> No claim ha[d] been asserted [in this case] under the [NHWA] . . . . That act specifically preserves to the owner any other available remedies. . . .  In the face of this reservation of remedies we will not construe the statutory warranty remedy as in any sense exclusive and a bar to a claim under the [CFA].
>
> [Id. at 499 n.1 (internal citations omitted).]

In the present case, the election-of-remedies provision within the NHWA did not prevent the homeowners from seeking relief in the trial court as to the

11

claims and consumer fraud issues that were not within the scope of the DCA's warranty authority. In particular, the nine punch-list items the DCA specifically excluded from its decision were explicitly preserved for possible future litigation. In addition, the DCA's decision did not adjudicate the homeowners' non-warranty claims of alleged misrepresentation and unconscionable delay in completing the construction. We agree with the trial court that the NHWA did not bar those claims in the Law Division.

Nor are we persuaded that the Contractors' Business Registration Act ("CBRA"), N.J.S.A. 56:8-136 to -152, precludes the homeowners' claims. The CBRA "created a framework within the CFA that regulates contractors who are engaged in the business of making or selling home improvements." Czar, Inc. v. Heath, 198 N.J. 195, 202 (2009) (emphasis added). The present case involves the construction of a new home, not a mere "home improvement."

Having concluded the CFA is indeed applicable to the subject matter of this trial, we are also satisfied the trial court did not err in concluding that the homeowners had proven a violation of the CFA by the requisite preponderance of the evidence. Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 541 (App. Div. 1996), aff'd, 148 N.J. 582 (1997). Infringements of the CFA can arise under three different categories: (1) "[a]n affirmative misrepresentation,

12

even if unaccompanied by knowledge of its falsity or an intention to deceive"; (2) "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent"; and (3) "'violations of specific regulations promulgated under the [CFA].'"[1] Monogram Credit Card Bank of Georgia v. Tennesen, 390 N.J. Super. 123, 133 (App. Div. 2007) (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994)). In addition, a consumer must establish an "ascertainable loss" proximately caused by the unconscionable practice. N.J.S.A. 56:8-19; Dugan v. TGI Fridays, Inc., 231 N.J. 24, 52 (2017).

In considering these elements of the CFA, our courts are obligated to "construe the CFA in light of its objective 'to greatly expand protections for New Jersey consumers.'" D'Agostino v. Maldonado, 216 N.J. 168, 183 (2013) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 555 (2009)).

The trial court appropriately adhered to these principles here. It reasonably concluded from the evidence that—given the significant delay of the home's completion, the communications from the builder the court deemed to have "strung along" the homeowners, and the homeowners' ascertainable losses in housing and kennel costs resulting from that conduct—the homeowners were entitled to relief under the CFA.

---

[1] This third category is not applicable here.

We must further note that the modest damages awarded by the trial court were measured and equitable, in light of the long history of the parties' dispute and the offsetting gains they had each obtained before the trial. As we noted above, the builder was able to recover in the lien process most of the money that he claimed the homeowners owed him. Meanwhile, the homeowners prevailed in the DCA hearing on half of the warranty items they had pursued. The court also equitably recognized that the majority of the counsel fees sought by the homeowners were unreasonable under the case law and RPC 1.5, and accordingly reduced the fee award by more than half to a calculation that neither side has mathematically challenged.

We also discern no reason to disturb the trial court's denial of the competing breach of contract claims that had been respectively asserted by the builder and the homeowners. The court made explicit credibility findings that supported its decision, and we do not second-guess those findings. Seidman, 205 N.J. at 169. Any remand for further proceedings or reconsideration is not warranted, particularly given that nearly a decade has passed since this home was built and the parties have already incurred considerable time and expense in litigating their disputed claims.

In sum, appellant has failed to demonstrate that the "factual findings and legal conclusions of the trial judge . . . are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Ibid. (internal quotation and citations omitted).

To the extent we have not addressed above any additional arguments presented on appeal, they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0372-24